Good morning. May it please the Court, David Firmino, Assistant Federal Public Defender on behalf of Appellant Kennard Carter. The issue before this Court is the proper meaning to give to the words alter and obliterate as they are used in United States Senexing Guidelines Section 2K2.1b.4. More specifically, whether the two letters alter and obliterate are used in United States Senexing Guidelines Section 2K2.1b.4. And if they are not, they should be applied in a case where the serial number on the weapon could be read with a microscope but was not visible to the naked eye. Let's stop there for just a second, because we received a 20HA letter from the government relative to Blakeley and to the issue about visible to the naked eye. As I read your briefs, am I correctly interpreting your position that you agree that the serial number is not discernible or not visible to the naked eye? It's not discernible to the naked eye, but can be discernible under a microscope. That's correct, Your Honor. Okay. If that's the case, what's this disputed issue of fact if the law would say that if it is scratched, marred, or whatever, is sufficient to satisfy the statute, then we don't have a Blakeley issue? Is that correct? Am I looking at this the wrong way? I believe so, Your Honor. I think that this Court, regardless of how Blakeley is decided, excuse me, the Booker-Fanfan cases are decided interpreting Blakeley. I think that this Court needs to give guidance to the lower courts as to the meaning of the words that are in this guideline. I think Judge Brunetti's question was a slightly different one, and that is whether there is a factual issue that remains in this case or only a legal issue. In other words, the Booker-Fanfan duo is about who decides facts, not who decides legal questions. So are we in a situation with agreed facts and a dispute only as to the meaning of the statute? I believe we are in the situation with the meaning of the statute, Your Honor. Okay. Okay. Now let's go to the next step. As I understand this case, the guidelines put your client into a range where he was given a sentence at the lower end of that range. That's correct. Okay. If we remove the enhancement, you get another lower range, so that the bottom of that range would be lower than 46 that he got under this calculation by the district court. Am I correct on that? That's correct, Your Honor. His sentence was increased roughly by 20 percent. Okay. So even if we're not talking about a factual determination, does it have to go back, even without a Blakeley analysis, to allow the judge to drop down, if he can, by removing the under your theory of the case, by removing the enhancement so that if he was thinking about going the lowest of the low, he could go lower than 46? Under that analysis, no, Your Honor. It would not have to go back. So with or without Blakeley, it's got to go back. I believe that's correct. Okay. I have a question about the merits of your argument. I understand what you're saying with respect to the word obliterate, but the alternative word is alter. So, for example, what's your position if a serial number said 11 and it were altered to read 44? It's still visible, but it says something new. Does that count as altered or obliterated? To answer the question, I think that that is precisely the hypothetical that I planned on posing this morning, and I think that that's exactly what alter means. And I think what we're talking about here is information. What a serial number is, is information. And if you change a number from 11 to 12, as the Court suggested, or the other way around, you've changed information, and that's you've prevented law enforcement from tracing a weapon. But does law enforcement always have a microscope? I mean, is this meant to be practical or critical? I think that, in fact, law enforcement, this is routine in terms of the analysis of a weapon. We're not talking about something that is beyond everyday analysis of a weapon when it comes into the hands of law enforcement. What occurred here was Mr. Carter was arrested at the beginning of the ---- So in, you know, the town of Sio, Oregon, where they have one police officer, do you think they have available the machinery to tell what this serial number was? Yes. I would imagine, Your Honor, yes. I think microscopes have been around for 400 years. And so I doubt very much that even in Oregon that in a small town ---- They exist. My point is that there are a lot of very small law enforcement agencies. The world is not only big cities. There are places that have one part-time cop in a rural area. And I guess my ---- what I'm suggesting is or asking you is, is this ---- how practical do you think our interpretation should be? Well, I think that the ---- I think that it would be ---- it would not be impractical to say that where a serial number is readable with assistance beyond that of the naked eye, that that would not make or hinder, rather, law enforcement in their investigation of this type of case, regardless of where you would find ---- where one would find oneself. I think even in a small town, this kind of extra step or, excuse me, this kind of step is routine in any kind of investigation. We're not talking about DNA analysis. We're not talking about some extraordinary step. We're talking about looking at a weapon under a microscope, which I would imagine is available to most law enforcement agencies, regardless of the location. Is the gun more valuable on the street if it appears to have an obliterated serial number, and does that make any difference? I think, Your Honor, if the serial number is indeed obliterated, that is, wiped away, destroyed ---- To the naked eye. Excuse me? Assumed to the naked eye. To the naked eye. I would imagine that its value would be increased, yes. Does that matter? I don't believe so for our purposes. I think the issue is traceability. I think ultimately what this Guidelines section is about and what this enhancement is meant to punish is to those weapons which ultimately are not traceable, and that was not the case with this weapon. You're relying on ceasing, then? That's correct, Your Honor. And I think that the ---- I read your brief, and I've been pondering this a lot. What is the significance of ceasing involved a homemade silencer without a serial number? In other words, you're taking the concept of ceasing, but what relevance is that ceasing had a different instrumentality here? Because I suppose, following Judge Hall's question, if I'm a ---- what relevance does it have in the street sense and to the conviction under the statute, i.e., if I can get a gun on the street that has the serial number obliterated to the extent we can use that word to say I can't read the serial number, or there is a silencer with no serial number at all, which is ceasing's analysis of that instrumentality, does it make any difference of the instrumentality? Or are you saying no matter what the instrumentality is, if it is rendered untraceable, then you have a violation? If it's not rendered untraceable in the total scientific sense, then you can never have a conviction under the statute. You must be taking that purist view under ceasing that unless it's ---- unless if it's never untraceable, i.e., it never had a serial number and it was homemade, so therefore, that's not a problem, right? Well, that's correct. So that would be the clear-cut rule. Well, I think ---- and I think the Court's analysis in ceasing is the correct one. If this loophole that they identified really has to be changed by the sentencing commission and not by the courts. And so here what we're talking about is ---- and I think the Court's ---- the point that the Court makes is correct, which is the argument that we're advancing is that as long as a weapon is traceable and remains traceable, then this enhancement ought not to apply. But then the traceability comes from the analysis in ceasing, and yet the statute does not say traceability. It's talking about we're going into dictionary definitions of those words. That's correct. The statute does not use the word traceability. It uses alter and obliterate. And the very reason it uses those two words is because what we're talking about is information. And when you alter something, you change information. When you obliterate, you remove information. Either way, you're preventing law enforcement from tracing a weapon. And it can't be that they mean the same thing. Otherwise, why would both words be used? They have to mean something different. And I think that's ultimately the point. And I think that's where we derive the theory that what ultimately this is talking about is traceability. Counsel, you have only a couple of seconds left, but I will restore some of your time for rebuttal, if you'd like, since we've used some of it for questioning. Thank you. But if you use it now, you won't have it for rebuttal. I think that's what I was going to say. I'm going to wait for rebuttal. Thank you. May it please the Court, good morning. My name is Philip Carney. I'm an assistant United States attorney here in San Francisco, and today I obviously represent the United States. I don't want to interrupt you right now because we hit on the key issue relative to the first end of this, not on the Blakely issue. But in ceasing, we were pretty articulate. We state that while we understand the district court's desire to respect the underlying purpose of the Guidelines 2K21B4, discouraging the use of untraceable weaponry and agree that this purpose is frustrated by the use of homemade silencers without serial numbers, the plain language of the Guidelines is clear. Now, how do we deal with that language? Counsel seizes upon it and says, well, this is a traceability issue. Traceability is not in the statute. And yet we're pretty strong in ceasing. And other than the distinction between a homemade silencer, which never had a serial number, and therefore the traceability relative to serial numbers doesn't even exist, versus a weapon with manufacturer serial numbers that have been either removed, altered, changed, whatever, how do we do this analysis being we have to follow ceasing, we have to deal with that? And I agree with the Court that I think through all the cases that are on point in this issue, the Court's clear purpose is to discourage the use of guns that are untraceable or that are difficult to trace. I don't think anyone has an argument with that, Your Honor. What Petitioner does, though, is take the language of ceasing, which says we're trying to discourage untraceable firearms, and makes that a condition precedent to the implication of the enhancement where it was never intended by the legislature. It takes the simple purpose of trying to discourage untraceable weaponry and says, okay, therefore we're not going to impose this enhancement unless the gun is untraceable. So it takes a legislative purpose and makes it a condition precedent where it really is not intended to do so. I would suggest to the Court that a better interpretation of this own Court's true intent on this issue comes in the Mack decision, which I cite in our papers. This is at 164 Fed 3rd 467. This is a 99 decision. And in Mack, the defendant was charged with the possession of a plethora of weapons, sawed-off shotguns, machine guns, I believe, weapons with altered serial numbers. Convicted, and he made the same kind of argument that Petitioner makes now, that the enhancement can't be imposed unless a weapon is untraceable, among a large number of other arguments he made. Justice Trott, writing for the majority, said the following in his decision. This is at page 472 of Mack, and I'm going to quote with the Court's permission. Justice Trott says, quote, It is common knowledge that the primary purpose of shortening a shotgun or a rifle under the permitted length is to make it concealable and thus effective in the commission of serious crimes such as bank robbery, murder, et cetera. The same purpose attaches also to the obliteration of serial numbers on handguns, colon. The act of obliteration makes them harder to trace. And I emphasize the words harder to trace. Well, you're probably pointing out the fact that we might have been a little bit loose in several decisions, and we're at the crossroads now. If we're going to be between Mack and Ceasing, we've got to go somewhere, if we can, without an embank. And I guess I'm reaching for that go somewhere, because when you talk about untraceability in today's world in science, I suppose you could come up with a situation you could trace almost anything, given enough science. But we seem to be generating back to the words of the statute on the obliteration altered and the street issue. I have a hard time equating those, because if it's traceability, sooner or later the lab is either going to say, hey, science has done it or has done not. What's the street element of this, if it has an element at all, considering the language of those two cases we have in our circuit? Well, I have a two-prong answer to the Court's question. Number one, as Justice Graber said before, there's a practical issue here. Namely, does every police officer on the street have a microscope? But say if the Court is going to get into practical impact. I understand that. Here's my problem. If traceability is, I'm watching too much TV, I'm watching too much CSI. If eventually it is, we caught this guy with a gun, and we're going to take this gun and run it through all this stuff, and eventually two weeks from now we find out what it came from, what difference does it make whether the police officer on the street can trace it or not? Somehow I'm getting a disconnect there. Right. And I think there is quite a bit of difference, Your Honor. If the Court looks at 18 U.S.C. 922K, this is the, if you will, the criminalization of this altered weapon, altered serial number possession. What 922K says is if you knowingly possess a weapon with an altered serial number, then you're guilty of the offense. Is it enough then that they've admitted that you can't read it with the naked eye then? I mean, we have an admission here in the briefs and in oral argument that you cannot read it with the naked eye. So he's in possession of this weapon that you cannot discern the serial number. There's no disputed facts there. Right. That's correct. However, I think by way of analogy, all the decisions that look at 922K, this is the criminalization of the possession. And what's interesting about this is the altered or obliterated language is exactly the same. It tracks the sentencing enhancement in 922K. The only difference between them, between the enhancement and the criminal statute, is that the possession of a gun that has an obliterated serial number has to be knowing. And all the cases say that to be found guilty of that crime, you have to know that the weapon you're possessing has an altered serial number. And I would argue this to the Court. If the Court takes the position that a weapon has to be untraceable, then how would you ever prove the scienter element of 922K? I mean, all a defendant would have to do, a defendant is caught with this weapon, with this exact situation, but charged with 922K instead of the enhancement. He comes into court and says quite simply, well, yeah, I knew that the weapon was ground down to the silver underbody of the weapon, and I knew that the serial number wasn't visible to the naked eye, but I didn't know that with a microscope you couldn't find this weapon. I didn't know that it was, in fact, untraceable. Complete defense to that crime. I think that the statute's wrong. Pardon me? Maybe that's the problem with the statute, that you would have to do that. In other words, I think it begs the same question. That is, we either start at the front end, i.e., to the naked eye you can't see it, therefore he knew he possessed a weapon that you could not read the serial number. Forget about the untraceability. We cause the untraceability issue when we put it in our opinions in ceasing. It's not in the statute. Well, my interpretation of ceasing is slightly different than the Court's. Obviously, ceasing was a case where the silencer never had a serial number, so the enhancement clearly didn't apply. You can't alter or obliterate something that never existed. With this Court, and this is completely the government's interpretation, but what this Court was doing when it was talking about the untraceability issue was lauding the district court. In reversing the district court, this Court, in ceasing, went on to say, while we appreciate the fact that we're trying to discourage untraceable weapons, we can't apply this enhancement in this situation. My reading of that is that that does not create a condition precedent for the implication of this enhancement. It merely discusses what we all agree is true, that we're trying to stop the use of or discourage the use of untraceable weapons. The Court's earlier reservation about the practical effects of making alteration equal untraceability, I believe, is a very valid point. So you can determine with a microscope a serial number. What if you can't determine with a microscope? How about if you need a scanning electron microscope? How about if you need radiographic X-raying? I'm going to this business about the street and where we stop the analysis, because anybody on the street in any given situation can say, I don't know whether this can be traceable or not. But if ultimately some science can trace it, I have a problem with how we construe that relative to our language, loose or not, in our opinions. Because it's obvious that the obliteration or the altering has been covered in many opinions, and there's been cases where you would use a screwdriver and just knock a couple off, that they still held that that satisfied the statute. It appears that we have our own traceability language to deal with. And the only way you've said is if you throw out ceasing reversed, and it was based upon an instrumentality without a serial number, never had a serial number, and so the obliteration issue is not there. So maybe ceasing just falls off as dicta. I believe it does. I believe a much better and more logical interpretation of the statute, or this alteration or obliteration issue, comes from Adams. The first district case which we cite in our briefing. Adams is a case where the defendant, as he admitted, scratched off with a serial number on a handgun. Very poorly. Very poorly. In fact, altering, I use the word altering on purpose, altering the look of a couple of the numerals in that serial number, but not making it invisible to the naked eye. And the court there, and this is, again, this is a case I cite in my papers at 305, Fed 3030. The court said that as long as the serial number becomes appreciably more difficult to read and there is significant impairment, that's enough. And I would get back to the scienter element of 922K here. If an individual with a criminal intent gets a firearm, does everything he or she can do to disguise that firearm, gets a screwdriver like the defendant in Adams, gets any kind of a tool that will help him take that serial number off, and to his mind does everything he legitimately can in his garage or wherever he's doing it to make that an untraceable weapon, logic dictates that that criminal act should be punished. The fact that he's not completely successful should not matter in the end because if that success is the ultimate issue, you're going to have thousands and thousands and thousands of police inspectors with handguns waiting in a line outside of forensic laboratories all over the country, waiting for every last possible test to be done on their handguns. Thank you, counsel. I think we understand the government's position and you've considerably exceeded your time. Okay, thank you. Unless the court has any more questions, I'm happy to sit down. Thank you. Thank you. Mr. Firmino, we'll give you two minutes. Thank you. I want to address the Adams case, but I also want to pick up on a point that Judge Brunetti made with respect to the street police officer, and I think that is I don't think the issue really is the officer on the street and what the officer observes on a weapon. An officer in this context has probable cause to arrest someone if there is a weapon involved and if they run a check on a person and see that they are a prohibited person. So the serial number doesn't really come at issue at that point. I think it is really later in time that it is relevant, and I think that's the focus. And so I don't think we can do away with the Ceasing case. I don't think we should put it to the side. I think, in fact, this Ceasing was very specific, it says, because this instrumentality, the silencer was homemade, never had a serial number. The guideline enhancement does not apply. It seems as though what we did is we threw out that enhancement on that instrumentality. This instrumentality had a serial number and was obliterated, so if you follow what we said in Ceasing, it does apply. Then the question comes where you are, well, is it traceable? Clearly, in Ceasing, it didn't, our reasoning was it didn't apply because it never had a serial number, and we're talking about obliterating serial numbers. That's correct. Okay. With respect to the Adams case, I would point out that the, I think it's precisely the fact that the statute in that case has a mens rea requirement that makes it completely not relevant to the issue before this Court. And that is the guideline enhancement here is a strict liability provision, and it's precisely because of that that we ought to be concerned about the 20 percent increase in the sentence for a weapon that ultimately had a, well, serial number ultimately was traceable. I think the focus really has to come back to traceability and the fact that this case is subject to routine police analysis, unlike the parade of horribles that the government presents of officers lined up outside of labs. I think this was routine. It was done in a matter of three weeks in the ordinary course of investigation, and it was determined that the weapon was traceable. Thank you, counsel. We appreciate the arguments of both parties, and the case just argued is submitted. The next case on our oral argument calendar is Catherine G. v. the Kentfield School District.
judges: Hall, Brunetti, Fisher